**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | | |
|---|---|---|
| STRATFORD UNIVERSITY, INC.,<br>a Virginia Corporation | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. _____ |
| ACCREDITING COUNCIL FOR<br>INDEPENDENT COLLEGES AND<br>SCHOOLS | ) ) ) ) | Injunctive Relief Sought |
| **Registered Agent**:<br>Resagent, Inc.<br>3190 Fairview Park Drive<br>Suite 800<br>Falls Church, VA 22042 | ) ) ) ) ) ) ) | Jury Trial Demanded |
| Defendant. | ) ) ) | |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Stratford University, Inc. ("University"), by counsel, alleges the following

factual allegations against Defendant, the Accrediting Council for Independent Colleges and

Schools ("ACICS"):

## INTRODUCTION

1.      This case is filed because ACICS, a recognized national accrediting agency,

deprived the University of its right to essential due process provided by ACICS' Criteria before

issuing a directive on February 26, 2020 ("Directive").  In doing so, ACICS violated its binding

Accreditation Criteria, Policies, Procedures, and Standards ("Criteria").  At the same time, it

thereby denied the due process required by the Higher Education Act of 1965 amended ("HEA")

and the regulations of the United States Department of Education ("Department").

1

2.      ACICS' actions come at a time when it is under immense pressure from numerous sources, including the Department, politicians, and policy think-tanks, for its failure to provide sufficient oversight of its member institutions.  In fact, on December 12, 2016, the Department revoked ACICS' recognition and only reinstated it in late November 2018 after substantial litigation.

3.      More recently, ACICS came under additional national scrutiny after a February 15, 2020 *USA Today* report uncovered that one of ACICS' member schools, Reagan National University ("Reagan"), seemingly had no students or faculty.[1]

4.      ACICS' unjustified adverse action against the University came a little over a week after publication of the report about Reagan became publicized, and just one day before a meeting of the Department's accrediting advisory body, the National Advisory Committee on Institutional Quality and Integrity ("NACIQI").

5.      ACICS issued the Directive in violation of its own Criteria and Department regulations.  In so doing, ACICS unlawfully denied the University due process provided for in the Criteria.  On information and belief, ACICS acted in response to on-going criticism of its oversight that failed to discover that Reagan was a school without students.  As such, upon information and belief, the actions taken against the University are intended to pacify the scrutiny to which it has been subjected at the expense of the University.

## PARTIES

6.      The University is a Virginia benefit corporation with its principal place of business in Virginia.  It was founded in 1976, and currently has about 2,000 students enrolled at three campuses in Virginia (Alexandria, Falls Church, and Woodbridge), one in Maryland

---

[1] *See* https://www.usatoday.com/story/news/education/2020/02/15/college-accreditation-department-education-betsy-devos-south-dakota-sioux-falls/4746906002/

(Baltimore), and one in New Delhi, India, and online.  The University offers master, bachelor, and associate degree programs including programs in Computer Science, Software Engineering, Cyber-Security, Business, Accounting, Health Sciences, Nursing, and Culinary Arts.

7.      ACICS is a non-profit corporation organized under the laws of the Commonwealth of Virginia.  It is recognized by the Secretary of the Department of Education as a national accrediting agency within the meaning of 20 U.S.C. § 1099b(f).

8.      The University is accredited by ACICS.  Accreditation is required for the University to participate in federal student loan and grant programs provided under Title IV of the HEA.

## JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the Constitution and laws of the United States, including the federal common law, and 20 U.S.C. § 1099b(f), which provides exclusive federal jurisdiction for disputes with recognized accrediting agencies.

10.      This Court has personal jurisdiction over ACICS as a nonprofit corporation organized under the laws of the Commonwealth of Virginia.

11.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

12.      In its February 26, 2020 Directive, ACICS unlawfully ordered the University to cease enrollments at all campuses and to notify administrative staff and prospective students of the Directive.  ACICS required that a notice be posted on the University's website homepage.

3

(Ex. 1—February 26, 2020 Directive). That notice was disseminated on March 2, 2020. (Ex. 14—March 2, 2020 Notice of Directive).

13.     ACICS issued the Directive after it received an edited YouTube video, which purportedly showed the University's president, Dr. Richard Shurtz ("Dr. Shurtz"), claiming that it had an accredited campus in Erbil, Iraq.  *Id.*

14.     The University disputes the context and significance of the YouTube clip and believes that other evidence provided to ACICS from an unknown source is similarly taken out of context and presented in a way that unfairly and inaccurately describes the situation in Erbil.

15.     Nonetheless, the University has been deprived of the due process rights provided by ACICS' standards. As a result, it did not have the opportunity to present evidence and defend itself before ACICS took an adverse action—ordering a total cessation of enrollment and requiring the execution of teach out agreements with other institutions.

16.     This amounts to an unlawful withholding of due process and requires immediate equitable relief.

17.     By way of background, the Directive stems from the University's unfortunate relationship with the Erbil International Academic City ("IAC") and its owner, Saqi Barzani ("Barzani").

18.     Upon information and belief, Barzani has been improperly marketing University programs to students in Iraq without the knowledge or consent of the University. Barzani's scheme is limited to his operations in Erbil, and since December 2019, the University has been in no way affiliated with him or IAC.  To the University's knowledge, no students at its India or United States campuses have been affected by his conduct.

4

19.     Beginning in 2016, Dr. Shurtz and Barzani began discussing a branch campus of the University in Erbil, which is located in the Kurdistan region of Iraq.

20.     Those plans were put on hold, however, when the region was subsequently invaded by ISIS.

21.     After ISIS left in 2018, Barzani obtained approval from the Iraqi Ministry of Higher Education ("Ministry") to establish the "American Stratford University".

22.     Initially, the parties planned to offer English-language programs to Iraqi students through the Stratford Language Institute ("SLI") until such time as the University met ACICS' requirements for opening a new branch campus in Erbil.  SLI is a separate entity and is not ACICS accredited.

23.     SLI is a wholly owned subsidiary of Stratford University, Inc.

24.     At all times, the University was clear with Barzani that until all accreditation requirements were met, no University programs could be offered in Erbil—only SLI courses.

25.     On June 10, 2018, the parties entered a Memorandum of Understanding ("MOU"), which made clear that "all offerings must comply with US accreditation standards and norms (CEA, ACICS, or others when applicable)."  (Ex. 2—June 10, 2018 MOU).

26.     After signing the MOU, Barzani informed the University that the Ministry required IAC to promptly begin operations.

27.     Upon information and belief, Barzani signed a lease for a building and sought to start courses immediately, all without the knowledge of the University.

28.     In order to help defray the lease expenses associated with IAC's premature activities, the University agreed to allow Barzani to begin offering the SLI courses, which do not require ACICS approval. This was intended to be a short-term arrangement.

29.     In the interim, the University began providing IAC and Barzani its course materials and other intellectual property in order to train the instructors and staff in the manner required to facilitate ACICS approval.  However, the University later became aware that Barzani and IAC were using the intellectual property to improperly offer University programs.  Barzani took advantage of the University's limited oversight capabilities while he was thousands of miles away.

30.     The University never enrolled, or authorized Barzani to enroll, a single student in Erbil.

31.     In September 2019, ACICS received complaints from students in Erbil which eventually led to ACICS issuing a Show Cause Order to the University on December 19, 2019. (Ex. 3—December 19, 2019 Show Cause Order).  In numerous emails to Barzani between September 2019 and the December 19 Show Cause Order, the University explained that Barzani could not represent that the University had an accredited campus in Erbil.

32.     Following the Show Cause Order, IAC terminated its agreement with the University, apparently because it was unwilling to abide by the requirements of ACICS and the University.  To avoid any on-going confusion caused by IAC and/or Barzani, the University sent notices to the SLI students for whom it had email addresses explaining that Stratford University was not accredited to offer programs in Erbil.  This notice was intended to eliminate any concerns that the students in Iraq were confused by the actions of ACICS and/or Barzani.

33.     The University responded to the December 19, 2019 Show Cause Order on February 14, 2020 (Ex. 4—February 14, 2020 Show Cause Response).  After previously indicating a hearing would be conducted at its April 2020 meetings, ACICS sent a notice on

March 2, 2020 setting a hearing for March 31, 2020.  (Exs. 3 at 4 and 3a (March 2, 2020 ACICS letter setting in-person hearing)).

34.     However, prior to the scheduled hearing, ACICS took adverse action against the school and issued the Directive on February 26, 2020.

35.     In justifying the Directive, ACICS relied upon what appears to an edited YouTube video of an interview Dr. Shurtz gave in Iraq, which purported to show Dr. Shurtz representing that the University was accredited to offer programs in Erbil.  (Ex. 1).

36.     Without any opportunity for the University to respond, ACICS ordered the University to immediately cease enrollments at all campuses, shutting off the lifeblood of the school.  *Id.*

37.     And the University has ample evidence to dispute ACICS' premature issuance of the Directive.  Dr. Shurtz and one other witness, Feroze Khan, do not recall Dr. Shurtz making any such statements.  (Ex. 13—Declaration of Faroze Khan ¶ 8).  The interview was about future plans to open an accredited branch of the University in Erbil.  *Id.* at ¶ 6.  The interview was over an hour long, yet the clip relied on by ACICS is only twelve minutes.  *Id.* at ¶ 5.  Statements in that video clip have been removed from any context in order to fit a narrative.

38.     On the same day it issued the Directive, ACICS also placed an inflammatory posting in the News & Events section of its website.  The press release makes clear that ACICS reached conclusions without providing the procedural due process provided by its Criteria, including Sections 2-3-403 and 2-3-700.  (Ex. 5—Feb. 26, 2020 ACICS Article).[2]

---

[2] The Feb. 26, 2020 ACICS Article is also available at https://www.acics.org/news/acics-requires-stratford-university-to-cease-enrollment-and-submit-a-fully-executed-teach-out-agreements-in-response-to-identified-compliance-failures.

39.     In its press release, ACICS states that it received information that "confirmed" the University offered programs in violation of the Show Cause Order, and that it "lost confidence in the ability of Stratford to live up to its obligations as an accredited institution." *Id.*

40.     Immediately after receiving the Directive, counsel for the University contacted ACICS to obtain the subject YouTube video.  (Ex. 6—Declaration of Peter Leyton at ¶ 4; Ex 7—Feb. 26, 2020 Email to ACICS re: Stratford University).

41.     After reviewing the video, counsel explained to ACICS that there were questions about the integrity of the video, that it was taken out of context, and was partial.  Accordingly, counsel asked for an opportunity to respond. (Ex. 6 at ¶ 5; Ex. 8—Feb. 26, 2020 Email to ACICS re: FW: Michelle Edwards shared "Michelle Bonocore" with you).

42.     The following day, February 27, 2020, counsel spoke on the phone with counsel for ACICS about the Directive.  Counsel explained that the University was unaware of any provision in the Criteria that provides for such a suspension of due process.  (Ex. 6 at ¶ 6).

43.     Several hours later, respective counsel spoke, and counsel for ACICS was unable to point to any language in the Criteria that authorized ACICS to cease all enrollments without due process.  Counsel for ACICS instead asserted only that he "could make an argument." He did not elaborate the basis for that argument.  *Id.* at ¶ 7.

44.     After speaking with ACICS' counsel, University counsel emailed the president and CEO of ACICS, Michelle Edwards, explaining that ACICS acted without authority and was denying the University due process.  (Ex. 6 at ¶ 8; Ex. 9—Feb. 27 and 28 Email String with ACICS re:  FW: Additional Stipulations on Current Institutional Accreditation of Stratford University, ID CODE: 00019411(MC)).

45.     Counsel also expressed concern about the damage being caused by the derogatory language posted on ACICS' website.  *Id.*

46.     Ms. Edwards responded on February 28, 2020 and ordered that the University comply with the directive by noon on Monday March 2, 2020. (Ex. 6 at ¶ 9; Ex. 9).

47.     Later that afternoon, counsel spoke with ACICS counsel by phone and informed him that the University would seek injunctive relief.  (Ex. 6 at ¶ 10).

48.     On Saturday, February 29, counsel left a voicemail for ACICS counsel confirming that the University would file for a temporary restraining order.  (Ex. 6 ¶ at 11). On March 2, 2020, ACICS Counsel informed Counsel for the University that ACICS would not rescind the Directive absent a court order and refused to extend the time to post the required notices.  *Id.* at ¶ 12.

## ACICS' IGNORED ITS OWN RULES

49.     ACICS is bound by its Criteria which are comprised of a compendium of policies, procedures, and standards.

50.     Title II, Chapter 3 of the Criteria outline the actions which ACICS may take when it has concerns about a school's compliance with accreditation requirements. (A true and correct copy of Title II, Chapter 3 of the Criteria is included in Ex. 10 – Excerpts from ACICS Criteria).

51.     There is no provision of the Criteria that authorizes ACICS to order a school to cease enrollments without first providing an opportunity to respond.

52.     Pursuant to the Criteria, before an adverse action by ACICS becomes final, certain due process requirements must be provided.  Those include:

   (a)     Opportunity for a review or hearing before ACICS on all material issues in controversy.

(b)    Written prior notice of the proceedings, the charges levied, and the standards by which the institution/campus ultimately is to be judged.

(c)    A decision on the record alone and a statement of reasons for the ultimate decision.

(d)    A right of appeal as provided in Section 2-3-600.

(e)    If the Review Board of Appeals affirms the withdrawal of accreditation by way of suspension, the appeal shall be deemed to be finally disposed of upon issuance of the decision and publication will be made as described in Section 2-3-607.

(Ex. 10, Section 2-3-403).

53.    ACICS' procedures for addressing complaints or adverse information obtained from third parties are stated in Section 2-3-700.  (Ex. 10).  Pursuant to that Section, if ACICS "determines that a complaint or adverse information warrants investigation, it will notify the chief executive officer of the institution in writing about the complaint or adverse information, and a copy of the information will be provided. The institution is requested to submit to the Council office its version of the conditions or circumstances which led to the complaint or adverse information." *Id.*

54.    If, after review of the institution's response, ACICS determines that an institution is out of compliance, it is limited to the following:

a.    Dismiss the complaint or terminate further investigation of adverse information;

b.    Postpone a final action on the complaint or adverse information if there is evidence that the institution is making progress to rectify the situation or if more investigation is necessary; or

c.    Notify the institution that, on the basis of information available, ACICS has determined that the institution is failing to comply with the Accreditation Criteria and that the institution is:

    i.   Issued a compliance warning;

    ii.   Directed to show cause why its accreditation should not be suspended, revoked, or otherwise conditioned;

    iii.   Directed to submit a report to ACICS detailing plans for rectifying the area(s) of noncompliance; or

    iv.   Directed to undergo a special on-site evaluation.

*Id.*

55.     Nothing in Section 2-3-700 authorizes ACICS to immediately direct an institution to cease enrollments merely upon receipt of adverse information from a third party.  ACICS simply is not authorized to do so without giving the institution an opportunity to respond.

56.     In its rush to prejudge the University, ACICS failed to follow its own Criteria in nearly every respect.

57.     First, ACICS issued its directive without providing the University a meaningful opportunity to respond to the underlying complaints.  Indeed, the University has not yet had an opportunity to respond to the anonymous allegations.

58.      Second, ACICS failed to give any prior notice of its intent to order a total cessation of enrollment.  Instead, it served its letter upon the University, publicly announced that it had rendered findings, and ordered compliance within 24 hours.

59.     Third, it relied on an incomplete and unsubstantiated record before summarily issuing the Directive and projecting to the world that it "lost confidence in the ability of Stratford to live up to its obligations as an accredited institution."

60.     Fourth, ACICS failed to explain the reasons why it was appropriate to cease enrollment at *all* campuses, even though they are in no way implicated by Barzani's conduct.

61.     Lastly, the Criteria preclude any right of appeal for a cessation of enrollment. ACICS limits the right of appeal to: (1) a denial of an initial grant of accreditation under Section 2-3-301 of the Criteria, (2) a denial of a renewal of accreditation under Section 2-3-302 of the Criteria, and (3) a suspension of accreditation under Section 2-3-402 of the Criteria.  (Ex. 10).

62.     As discussed above, ACICS improperly conjured a new rule not contemplated by the limitations on the actions subject to appeal.

63.     Nonetheless the University was not given an opportunity to appeal the Directive.

## ACICS Failed to Follow the Due Process Requirements of the HEA and the Department's Regulations

64.     The Department's regulations require accreditors to provide member institutions an opportunity to respond before an accreditor's adverse action becomes final.

65.     Specifically, the Department requires an accreditor to identify deficiencies in writing and provide sufficient opportunity for a written response and considering of the written response before any adverse action is taken.  34 C.F.R. § 602.25.

66.     Also, the Department requires accrediting bodies to provide an opportunity to appeal any adverse action before it becomes final.  *Id.* at § 602.25(f).

67.     Ordering a cessation of enrollment is an adverse action under the Department's due process regulations.  The Department defines an "adverse accrediting action" or "adverse action" as "the denial, withdrawal, suspension, revocation, or termination of accreditation, or any *comparable accrediting action an agency may take against an institution or program*."  34 C.F.R. § 602.3 (emphasis added).

68.     The effect of stopping enrollment across all campuses is effectively the same as a suspension or withdrawal of accreditation for that program.  Similarly, requiring a member

12

institution to enter into teach out agreements with competitors signals to enrolled students and staff that the University is closing.

69. ACICS agrees that a cessation of enrollment is an adverse action that requires review. Appendix L to the Criteria Student Achievement Standards and Campus Accountability Reports, allows ACICS to order an immediate cessation of enrollments for a specific program (*e.g.* Nursing, Business Administration, etc.) if employment placement rates drop below a certain level. (*see* Ex. 10—Excerpts from ACICS Criteria at 12-13). ACICS defines such an action as an "Adverse Action." *Id.* And importantly, Appendix L provides that the institution "will be allowed the opportunity for a review before the Council prior to the execution of an adverse action." *Id.* at 14. (emphasis added).

70. The Department precludes accrediting agencies from avoiding due process requirements with creative labeling by adding the "comparable accreditation action" language (referenced in ¶ 67, above). ACICS' cessation of enrollment order is comparable—if not identical—to a suspension or withdrawal of accreditation.

### The University Faces Irreparable Harm

71. ACICS has made public statements that are damaging the University's reputation earned over almost 45 years of operations. It is causing a loss of customer goodwill. ACICS publicly announced that it has "lost confidence in the ability of Stratford to live up to its obligations as an accredited institution."

72. Further, ACICS ordered the University to notify students who have already committed to enroll that they will no longer be able to do so. The University must also post that it is unable to enroll students on the front page of its website.

73.     Turning away students who have already committed to enrolling will result in a permanent loss of those students. They will enroll elsewhere.

74.     And as other prospective students research their options, they will see on the University's website the school is not permitted to enroll students.

75.     Forty-four years of hard work building a reputation of high-quality education will be undone in mere days.  There is <u>no measure of damages</u> that can compensate the University for this loss.

76.     Further, ACICS' prejudgment of the University has not gone unnoticed.  News outlets have already commented on the inflammatory article posted on ACICS' website.[3]

77.     And competitor schools have seized on the opportunity created by ACICS' premature article.  On February 28, 2020, a recruiting bus for one such competitor, Bay Atlantic University, was spotted directly outside the University's Falls Church, Virginia campus.  (Ex. 12—Picture of Recruiting Bus).

78.     The longer ACICS is allowed to maintain this article in the public domain, the greater the loss to the University's goodwill will be as more and more prospective students are dissuaded from enrolling.

79.     To the extent the University suffers any quantifiable loss due to a loss of enrollments, ACICS' Bylaws expressly limit the University's remedies to its membership fees only.  (A true and correct copy of Article VII, Section 10 of ACICS' Bylaws is attached hereto as Ex. 11—Bylaws).

80.     Article VII, Section 10 of the Bylaws states, "In any claim, cause or action of any kind by any . . . member . . . against ACICS, ACICS' liability is limited solely to reimbursement

---

[3] *See, eg.,* https://www.nbcwashington.com/news/local/stratford-university-at-risk-of-losing-accreditation/2227510/

of any application or membership fees paid by said . . . member . . . during the calendar year in which any such claim, cause, or action is initiated." (Ex. 11). That section goes on to state that ACICS shall not be liable for any "direct, indirect, incidental, special, consequential, or any other type of damages." *Id.*

81.     Thus, ACICS is shielded from any liability caused by its withholding of due process from the University. Unless this Court grants injunctive relief, the University will never recover its losses.

82.     Those losses are substantial. Currently, there are 139 students who have committed to enrolling later this month.

83.     If this Court does not grant injunctive relief, those students will no longer be able to enroll, and after having the rug pulled out from under them at the last minute, it is highly unlikely they will enroll in the future.

84.     The tuition those 139 students would have paid to complete their programs is $7,960,674.

85.     The University stands to suffer even greater losses because ACICS announced that the University is unworthy of accreditation. As a result, the University expects that many currently enrolled students will withdraw from the school in the near future.

86.     It is essential to the students that they graduate from an accredited school. As soon as the University loses accreditation, the students will lose eligibility for federal grants and student loans to attend the University.

87.     ACICS' improper and premature public judgment of the University will cause students to make alternate plans.

15

## **CAUSES OF ACTION**

### **Count I – Denial of Due Process**

88.     Paragraphs 1-87 are incorporated by reference herein as if set forth in full.

89.     ACICS, as an accrediting body, must demonstrate that the procedures it uses throughout the accrediting process satisfy due process.  34 C.F.R. § 602.25.

90.     Congress and the Department of Education have established minimal standards of due process that national accrediting agencies must afford member institutions.  *See* 20 U.S.C. § 1099b(a)(6)(c); 34 C.F.R. §§ 602.18, 602.25.

91.     Further, the Fourth Circuit recognizes that institutions may challenge accreditation decisions on the basis that they deprive the institution of fundamental due process under the common law.  *Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colls.*, 781 F.3d 161, 169 (4th Cir. 2015).

92.     Included among these standards of due process is a duty on the part of an accrediting agency to follow its own rules.  *See Prof'l Massage*, 781 F.3d at 172

93.     In issuing the Directive without first providing the University an opportunity to respond, ACICS violated its own Criteria and denied the University due process.

### **Count II - Injunctive Relief and Declaratory Relief Pursuant to 28 U.S.C. § 2201 *et seq.***

94.     Paragraphs 1-93 are incorporated by reference herein as if set forth in full.

95.     This action raises justiciable and actual controversies with respect to (i) whether ACICS followed its own Criteria when it issued the Directive; (ii) whether ACICS acted unreasonably, arbitrarily, and capriciously, when it issued the Directive; and (iii) whether ACICS improperly ordered the cessation of enrollment and reported the Directive on its website.

96.     A declaratory judgment resolving these issues will likely: (i) prevent future harm to the University resulting from ACICS' withdrawal of its accreditation; (ii) settle the legal rights of the University and ACICS in this action; and (iii) resolve the controversy that culminated in this action.

97.     If ACICS' Directive and website posting are permitted to stand, the University will suffer immediate and irreparable harm.  Ceasing enrollment will cause substantial financial losses to the University, which, pursuant to ACICS' Bylaws, the University cannot recover from ACICS.  Further, the required public notices and the inflammatory article posted on ACICS' website will cause a loss of students, immeasurable reputational harm, and loss of goodwill.

98.     The University has no adequate remedy at law to redress this irreparable harm in the event it is denied the equitable relief it seeks.

**WHEREFORE**, Plaintiff, Stratford University, respectfully requests:

(A)     That the Court enter a declaration that ACICS improperly ordered a cessation of enrollment at all University campuses and improperly reported its actions on its website, and accordingly that the Court vacate ACICS' Directive, because ACICS failed to follow its own Criteria and acted unreasonably, arbitrarily, and capriciously, and denied the University due process.

(B)     That the Court enter a temporary restraining order and preliminary injunction ordering ACICS to inform the United States Department of Education, the Department of Veterans Affairs, the Department of Defense, the State Council for Higher Education for Virginia, the Virginia Department of Professional and Occupational Regulation, and any other agency, organization, or individual who ACICS informed of the Directive,  that its decision to

order a cessation of enrollment at all University campuses has been vacated by court order and to

post a similar statement to its website.

      (C)     That the Court enter a permanent injunction—

           a.     vacating the ACICS' February 26, 2020 Directive;

           b.     returning the parties to the position they were in prior to the February 26,

2020 Directive;

           c.     ordering ACICS to provide the University an opportunity to respond to the

adverse information detailed in the Directive, pursuant to the procedures outlined in the Criteria,

before taking further adverse action against the University;

      (D)     That the Court enter an order retaining jurisdiction over this matter to enforce the

foregoing injunctive relief; and

      (E)     That the Court award such other relief as may seem just and proper.


Date:  March 3, 2020                /s/ David A. Obuchowicz
                                    Peter S. Leyton, VSB No. 21603
                                    Steven M. Gombos, VSB No. 30788
                                    David A. Obuchowicz, VSB No. 82483
                                    Gombos Leyton, P.C.
                                    11350 Random Hills Road, Suite 400
                                    Fairfax, VA 22030
                                    Ph: (703) 934-2660/9840 (fax)
                                    Email:  dobuchowicz@glpclaw.com

                                    *Counsel for Plaintiff Stratford University, Inc.*

## VERIFICATION

I, Richard Shurtz, a citizen of the United States and a resident of the Commonwealth of Virginia, have read the forgoing Verified Complaint for Declaratory and Injunctive Relief, and declare under the penalty of perjury, pursuant to 28 U.S.C. § 1746 that the forgoing is true and correct.

Executed this 3nd day of March 2020

_/s/Richard Shurtz_
Richard Shurtz

## CERTIFICATE OF SERVICE

I certify that I sent a true and accurate copy of the above-stated Complaint via first class

U.S. Mail, postage pre-paid and electronic mail to the following this March 3, 2020, to the

following:

> Michael C. Gartner
> Whiteford, Taylor, and Preston
> 3190 Fairview Park Drive, Suite 800
> Falls Church, Virginia  22042
> Ph: (703) 280-9267
> Email: mgartner@wtplaw.com

Date:   March 3, 2020                    /s/David A. Obuchowicz, VSB # 82483