IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| STRATFORD UNIVERSITY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-00240 |
| | ) |
| ACCREDITING COUNCIL FOR | ) |
| INDEPENDENT COLLEGES | ) |
| AND SCHOOLS, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**<u>DEFENDANT ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES
AND SCHOOLS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER
AND/OR PRELIMINARY INJUNCTION</u>**

COMES NOW Defendant Accrediting Council for Independent Colleges and Schools ("ACICS"), by and through its undersigned counsel, with its Memorandum in Opposition to Stratford University, Inc.'s ("Plaintiff" or "Stratford") Emergency Motion for a Temporary Restraining Order and/or Preliminary Injunction and, in support thereof, states as follows:

**<u>Introduction</u>**

Stratford is an educational institution that is accredited by ACICS with a current enrollment of approximately 2,000 students.[1] Stratford is currently going through ACICS's administrative procedures in connection with several accreditation concerns, and is currently on "show cause" status within ACICS's procedures. Stratford has been informed of ACICS's concerns, has been provided with opportunities to submit written responses, and is scheduled for a hearing before

---

[1] Stratford's action is a challenge to ACICS's directive to temporarily suspend new enrollments, and Stratford has noted in its Memorandum that there are only 139 new students scheduled to enroll. *See* Stratford's Memorandum at 17.

1

ACICS on March 31, 2020. Stratford's ACICS accreditation remains in place and no accreditation decision has been made by ACICS at this time, as the administrative process is still underway. Stratford has nonetheless filed this action and seeks judicial intervention midstream in the administrative process. Stratford's effort to engage the Court in the administrative process is premature and improper, and ACICS's actions in all respects have been reasonable, justified, and within the strictures of due process and its own procedures. Stratford's motion should therefore be denied.

## Factual Background

ACICS, which dates back to 1912, is a not for profit, non-stock corporation organized under the laws of Virginia exclusively for educational purposes, with its current principal place of business in the District of Columbia. (Declaration of Michelle Edwards ("Edwards Declaration") at ¶ 3, appended hereto as **Exhibit 1**) ACICS has been granted 26 U.S.C. §501(c)(3) tax exempt status by the Internal Revenue Service as a nonprofit organization operated exclusively for educational purposes. (Edwards Declaration at ¶ 4.) ACICS has been recognized since at least 1965 by the U.S. Secretary of Education as a reliable authority concerning the quality of education and training offered by the educational institutions that it accredits. (Edwards Declaration at ¶ 4.) The scope of ACICS's recognition includes private postsecondary institutions offering certificates or diplomas and postsecondary institutions offering associate's, bachelor's, or master's degrees in programs designed to educate students for professional, technical, or occupational careers, including those that offer those programs via distance education. (Edwards Declaration at ¶ 5.) ACICS accredits 90 campuses enrolling nearly 40,000 students. (Edwards Declaration at ¶ 5.)

To aid in the process of accreditation and consistent with the regulations of the Department of Education, ACICS has promulgated its *Accreditation Criteria: Policies, Procedures, and*

*Standards*. (Edwards Declaration at ¶ 6.) The current edition of the *Accreditation Criteria* is attached as **Exhibit 2** hereto and can be found on the ACICS website. In addition, ACICS is governed by its Bylaws, which are also incorporated into the *Accreditation Criteria*. (Edwards Declaration at ¶ 6.) These and ACICS's other policies and procedures are regularly reviewed by the Department of Education for consistency with the recognition criteria of the United States Secretary of Education. (Edwards Declaration at ¶ 6.)

Accreditation is a process of peer review through which an institution applies for accreditation to an accrediting body, which in turn may accredit the institution for a set period of time based on evaluation of the institution's compliance with a series of criteria. *See Peoria School of Business, Inc. v. Accrediting Council for Continuing Educ. & Training,* 805 F. Supp. 579 (N.D. Ill. 1992); *Parsons College v. North Cent. Ass'n of Colleges and Secondary Schools,* 271 F. Supp. 65, 73 (N.D. Ill 1967). The accreditation process was established long before the enactment of the Higher Education Act of 1965 as a form of peer review among institutions of higher learning. *See Parsons College*, 271 F. Supp at 66. "Accreditation, among other things, entitles educational institutions to access Title IV federal student aid funding." *Professional Massage Training Center, Inc. v. ACCSC,* 781 F.3d 161, 167 (4th Cir. 2015). It has long been recognized that, "the accreditation agency's expertise and knowledge merits a measure of deference from generalist federal courts." *Id.* at 171.

Stratford University is a large, proprietary, multi-campus university offering undergraduate and graduate programs in computer systems and information technology, business administration and accounting, hospitality management and culinary arts, and health sciences and nursing. (Edwards Declaration at ¶ 7.) ACICS's records reflect that the institution most recently had eight locations: six in Virginia, one in Maryland, and one in New Delhi, India. (Edwards Declaration at

¶ 7.) Three of the Virginia campuses recently closed while Stratford was going through the ACICS accreditation renewal process. (Edwards Declaration at ¶ 7.) Dr. Richard R. Shurtz, II and Ms. Mary Ann Shurtz took over the school in 1986 from his father, Richard R. Shurtz Sr. (Edwards Declaration at ¶ 8.) Stratford University has been continuously accredited as a member of ACICS since 2002. (Edwards Declaration at ¶ 9.)

Stratford's compliance with the *Accreditation Criteria* in recent years has been tenuous. Stratford has been placed on "show cause" status four (4) times in the last five years, and has been issued three (3) compliance warnings during that time. (Edwards Declaration at ¶ 10.) In January and February 2019, ACICS completed renewal of accreditation visits to 6 Stratford campuses, which resulted in an astounding 107 findings by the visit teams of non-compliance with the *Accreditation Criteria*. (Edwards Declaration at ¶ 11.) ACICS provided Stratford with time to attempt to come into compliance rather than promptly withdrawing Stratford's accreditation. (Edwards Declaration at ¶ 11.)

During the time that Stratford was being evaluated for renewal of accreditation, ACICS received information regarding an alleged unapproved branch campus being operated by Stratford in Erbil, Iraq. (Edwards Declaration at ¶ 12.) ACICS conducted an investigation and provided Stratford with an opportunity to respond to the information. (Edwards Declaration at ¶ 12.) Stratford essentially denied that it was operating a campus in Iraq. (Edwards Declaration at ¶ 12.) At its December 2019 meeting, the ACICS Council considered Stratford's response regarding the remaining areas of non-compliance, as well as its response to the allegations regarding the alleged campus in Iraq. (Edwards Declaration at ¶ 13.) ACICS issued a letter to Stratford on December 19, 2019, which details the issues, identifies remaining areas of non-compliance, and cites specific evidence regarding the Iraq campus. (Edwards Declaration at ¶ 13.) A true copy of the December

19, 2019 letter is attached as **Exhibit 3** hereto. By way of that letter, Stratford was placed on show cause for the activities in Iraq and for the other areas of non-compliance, was ordered to appear for a hearing before the Council at the April, 2020 meeting, and its grant of accreditation was extended to May 31, 2020 to allow these procedures to take place. (Edwards Declaration at ¶ 13.)

In February 2020, ACICS received additional information regarding Stratford's operation of an unapproved campus in Iraq. (Edwards Declaration at ¶ 14.) Stratford had previously advised ACICS that it was not engaging in such operations, yet the information received by ACICS included a YouTube video of Stratford's President, Dr. Richard Shurtz, clearly stating that the Iraq campus was accredited and was offering programs that are being offered in the U.S. (Edwards Declaration at ¶ 14.) In the video, Dr. Shurtz states, "I think one very important fact to understand is that Stratford University is going to offer the same quality programs here [Kurdistan] that we have in the U.S. That's important because **this is a fully accredited campus**, and if this campus fails, I lose accreditation in all the campuses. So this campus must be as good as the rest. So that accreditation is really the key to quality here in Kurdistan." *Stratford University/Richard Shurtz Higher Education International Scam – The Smoking Gun*. YouTube, (February 3, 2020) (emphasis added). A true screenshot of Dr. Shurtz from the video is attached as **Exhibit 4** hereto. The troubling statements in the YouTube video by Dr. Shurtz, along with other evidence of Stratford's operations in Iraq, led the ACICS Council to place an additional condition on Stratford as part of the pending show cause action, which was to temporarily cease new enrollments until the show cause hearing could take place. (Edwards Declaration at ¶ 15.) That action was taken for the protection of new students due to the seriousness of Stratford's actions, and the requirement to submit executed teach-out agreements was imposed for the protection of the existing students. (Edwards Declaration at ¶ 15.)

The requirement to suspend new enrollments was contained in ACICS's February 26, 2020 letter to Stratford, and the show cause hearing is scheduled for March 31, 2020. (Edwards Declaration at ¶ 16.) A true copy of the February 26, 2020 letter is attached as **Exhibit 5** hereto, and a true copy of the March 31, 2020 hearing notice is attached as **Exhibit 6** hereto. Accordingly, the suspension of new enrollments is in effect for just over one month. Stratford's ACICS accreditation remains in place at this time, and Stratford has been notified that it will have a full opportunity to address all outstanding issues, including the issues regarding the Iraq campus, at the March 31, 2020 hearing before any adverse action is taken by ACICS. (Edwards Declaration at ¶ 17.)

**Argument**

I. **The Plaintiff's Motion Must Be Denied As Stratford Has Failed To Exhaust All Administrative Remedies**

Judicial review of accreditation determinations is akin to judicial review of administrative agency decisions. *See Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges,* 781 F.3d 161, 170 (4th Cir. 2015) (noting that, "while the [APA] does not specifically apply to [the accrediting agency], principles of administrative law are useful in determining the standard by which we review the [agency's] decision-making process." (citations omitted)). As noted above, Stratford elected to file the instant lawsuit and motion **prior to** the scheduled show cause directive hearing before ACICS on March 31, 2020, and prior to any accreditation decision being made. This action is premature, deprives the Court of a complete administrative record on which to make a decision, and the motion should therefore be denied.

As set forth in Section 2-3-230 of the *Accreditation Criteria*, show-cause is a status that the Council [ACICS] may impose on an institution when it determines that the institution or one of the campuses within the institution does not materially operate in accordance with the

*Accreditation Criteria. See* **Exhibit 2** at Section 2-3-230. Show cause is the most serious interim action ACICS can impose prior to taking an adverse accreditation action against an institution. As part of the show cause directive, an institution, such as Stratford, is afforded the opportunity to demonstrate, through an in-writing or in-person hearing before the Council, why adverse action should not be taken by the Council. *See* **Exhibit 2** at Section 2-3-230. The "adverse actions" that could result from a show cause review are specified in the *Accreditation Criteria* at Section 2-3-300, which is "Accreditation Denied," and Section 2-3-400, which is "Accreditation Withdrawn." *See* **Exhibit 2** at Sections 2-3-300 and 2-3-400.

In the matter at hand, Stratford is not challenging a final adverse action of the Council. Instead, Stratford is seeking to challenge an interim temporary decision made by the Council to protect current and prospective Stratford students in the event adverse action is taken by ACICS after the show cause hearing on March 31, 2020. The temporary suspension of new enrollments is a condition of the pending show cause, and it is not unusual for the Council to impose reasonable conditions on institutions in distress. Indeed, the section of the *Accreditation Criteria* under which the show cause procedures are located is entitled, "Accreditation Deferred or Conditioned." *See* **Exhibit 2** at Section 2-3-200. Suspending new enrollments is a reasonable condition imposed by the Council in accordance with Stratford's show cause status.

In its Memorandum, Stratford repeatedly argues that the temporary suspension of new enrollments constitutes an "adverse action," but a review of the applicable federal regulations shows that it is not. "Adverse action" is defined in the regulations as "the denial, withdrawal, suspension, revocation, or termination <u>of accreditation</u> or preaccreditation, or any <u>comparable accrediting action</u> an agency may take against an institution or program." 34 C.F.R. § 602.3 (emphasis added). There is no dispute that ACICS has not denied, withdrawn, suspended, or

revoked Stratford's accreditation. Stratford attempts to argue, however, that the one month deferral of new enrollments is a "comparable accrediting action." It simply is not. The temporary delay of new enrollments pending a show cause hearing is in no way similar to an actual termination or suspension of Stratford's overall accreditation, and therefore cannot be characterized as an "adverse action."

Regardless, even if conditioning new enrollments could be considered to be an "adverse action," Stratford has no basis upon which to claim that ACICS lacks authority to take such action. The applicable federal regulations require accrediting agencies to take immediate adverse action when the agency learns that an institution may not be in compliance.

> (a) If the agency's review of an institution or program under any standard indicates that the institution or program is not in compliance with that standard, **the agency must --**
> **(1) Immediately initiate adverse action against the institution or program**; or
> (2) Require the institution or program to take appropriate action to bring itself into compliance with the agency's standards within a time period that must not exceed -
> (i) Twelve months, if the program, or the longest program offered by the institution, is less than one year in length;
> (ii) Eighteen months, if the program, or the longest program offered by the institution, is at least one year, but less than two years, in length; or
> (iii) Two years, if the program, or the longest program offered by the institution, is at least two years in length.

34 C.F.R. 602.20(a) (emphasis added). The ACICS *Accreditation Criteria* contain the same requirements in the Introduction to Title II, Chapter 3. *See* **Exhibit 2** at Title II, Ch. 3. Indeed, the Fourth Circuit Court of Appeals recently considered this precise issue in its unpublished opinion in the matter of *Bristol Univ. v. Accrediting Council for Indep. Colleges & Schs*, 691 Fed. Appx. 737 (4th Cir. 2017). One of the issues in that case was whether ACICS was required to give the school additional time to demonstrate compliance, and in reversing the District Court, the Fourth Circuit specifically found that, "[a]lthough the Accreditation Criteria provide that two years is the *maximum* amount of time ACICS would give an institution like Bristol to come into

8

compliance, ACICS was not required to provide Bristol any minimum amount of time to remedy its deficiencies." *Id.* at 743. Accordingly, ACICS's action in suspending new enrollments was proper and in full compliance with the *Accreditation Criteria*.

Further, and contrary to Stratford's arguments, a temporary hold on enrollments is not a novel or unreasonable action when an institution's accreditation is at risk. Indeed, this Court approved such a measure in the District Court proceedings of the *Bristol University* case. In that case, the Court issued a temporary restraining order reinstating the school's accreditation, but specifically included a condition that the school was not allowed to enroll new students during the pendency of the TRO. A true copy of the Court's Order is attached as **Exhibit 7** hereto. The Court recognized that when a school's continued accreditation is uncertain, it is reasonable to suspend new enrollments for the protection of those potential students. ACICS's action in this matter is no different than the action embraced by the Court in *Bristol*, as the temporary suspension of enrollments is a reasonable condition in light of the serious nature of Stratford's show-cause status. Stratford continues to maintain accreditation during the pendency of the show cause directive and it is clear that Stratford's motion is seeking to challenge a temporary ACICS measure which is not ripe for judicial review.

The United States Supreme Court has explicitly held that "the doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006) (*citing McKart v. United States*, 395 U.S. 185, 193 (1969)). The Supreme Court went on to elaborate: "[t]he doctrine provides that no one is entitled to judicial relief for a supposed or threated injury until the prescribed administrative remedy has been exhausted." *Id.* The Fourth Circuit has also highlighted the importance of the doctrine of exhaustion of administrative remedies. In *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, the Fourth

Circuit recognized that it is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Cavalier Tel., LLC v. Va. Elec. & Power*, 303 F. 3d 316, 322 (4th Cir. 2002)(*citing Myers v. Bethlehem Shipbldg. Corp.*, 303 U.S. 41, 50 (1938). The Court went on to explain that the exhaustion requirement serves to "allow an agency the opportunity to use its discretion and expertise to resolve a dispute without premature judicial intervention and to allow the courts to have benefit of an agency's talents through a fully developed administrative record." *Id.* (citing *Props. IV Ltd. v. Dep't of Hous. & Urban Dev.*, 907 F. 2d 445, 448 (4th Cir. 1990); *McKart v. United States*, 395 U.S. 185, 194 (1969) ("And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or apply that expertise"). The administrative process, therefore, must be fully played out before judicial review may be undertaken.

Here, the administrative remedy clearly has not been exhausted, and there is not a fully developed administrative record. The March 31, 2020 administrative hearing has not taken place, the ACICS Council has not made an accreditation decision, and, if an adverse decision is made, there is an internal appeal process that must be followed before judicial intervention may be sought. *See* **Exhibit** 2 at 2-3-600. Stratford asserts that the temporary suspension of new enrollments amounts to a *de facto* denial of accreditation, but there is no support for such a position. As they note in their brief, Stratford has approximately 2,000 currently enrolled students, and there are only 139 new students currently scheduled to enroll later this month who may be affected by the suspension in new enrollments. *See* Stratford's Memorandum at 4, 17. Those new students are a small fraction of Stratford's overall enrollment, and deferring those 139 new enrollments can in no way be characterized as having the same impact as an actual withdrawal of Stratford's

accreditation. Simply stated, Stratford's ACICS accreditation remains in place, both in a practical sense and as a matter of undisputed fact.[2]

The action being pursued by Stratford can only be characterized as a request for interlocutory review of a show cause order in the midst of an on-going administrative process. Such an interim review would be unprecedented. As noted above, it is common for conditions to be placed on schools that are in show cause status, and Stratford's position would open the door to judicial review of every such condition. Some schools are required to provide additional reporting, some are required to revise their policies, some are prohibited from opening new branch campuses, some are prohibited from starting new programs, and the list of potential conditions goes on. Stratford would have the Court weigh in every time an accrediting body placed such a condition on one of its member institutions as part of the body's accreditation review procedures, but principals of limited judicial involvement and review of administrative decisions do not allow for such activity. Stratford's accreditation is intact and it may continue operations as usual, including collecting tuition payments, as to its approximate 2,000 currently enrolled students. Accordingly, based on the well-established doctrine of exhaustion of administrative remedies, Plaintiff's Motion must be denied, as no reviewable decision has been made and the administrative process is ongoing.

---

[2] Stratford also makes the argument in footnote 3 of its Memorandum that the suspension of new enrollments amounts to an "adverse action" based on a chart contained in Appendix L to the *Accreditation Criteria*. A review of Appendix L, however, reveals that it relates only to student achievement issues, and that the suspension of enrollments in particular programs as addressed therein relates to programs that are being shut down. In such cases, suspension of new enrollment may be an "adverse action" because it is in connection with the closure of a program. In this case, the suspension of new enrollments is a temporary condition as part of the show cause directive and cannot, therefore, be considered to be an "adverse action" on its own. The "adverse action" as to Stratford would be a withdrawal of its accreditation, and that has not occurred.

## II. Stratford Cannot Satisfy The Necessary Elements For Issuance Of A TRO

This Court has frequently set forth the standard for injunctive relief:

> Claims for temporary restraining order and preliminary injunction are governed by the same four-part test which requires that a claimant show '(1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.' *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009). The threshold requirement for this test is that 'the plaintiff has made a strong showing that he is likely to succeed on the merits of his claim.' *Id.* at 345-46 (*citing Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)). The burden rests on the plaintiff to successfully assert this claim, and show that he is likely to be 'irreparably harmed absent injunctive relief.' *The Real Truth About Obama, Inc.*, 575 F.3d at 347.

*Granados v. Bank of America*, 2015 U.S. Dist. LEXIS 109777 (E.D.Va. Aug. 19, 2015). Importantly, the Fourth Circuit recognizes that for a plaintiff to obtain relief of this nature, "all four requirements must be satisfied." *The Real Truth About Obama, Inc.*, 575 F.3d at 346, *vacated on other grounds*, 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), *reinstated in relevant part*, 607 F.3d 355 (4th Cir. 2010). In other words, "[t]he failure to show any one of the relevant factors mandates denial of the preliminary injunction." *Parson v. Alcorn*, 157 F.Supp.3d 479, 491 (E.D.Va. 2016). Stratford cannot satisfy all four of the necessary elements, and its motion should therefore be denied.

### A. Stratford Cannot Show A Likelihood Of Success On The Merits

As noted above, there is no judicially reviewable decision by ACICS at this time, so the analysis of the factors for injunctive relief is premature. That said, ACICS's actions are proper in all respects, and the standard of limited judicial review of accreditation determinations is well-established. In a 2015 published opinion, the Fourth Circuit Court of Appeals in *Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges* reversed the Eastern District of Virginia trial court's ruling against the accrediting body, finding that, "the

district court applied [the] deferential standard in name only - - instead conducting what amounted to an improper *de novo* approach to the accreditation process." *Professional Massage Training Center, Inc. v. Accreditation Alliance of Career Schools and Colleges,* 781 F.3d 161, 169 (4th Cir. 2015). The Court of Appeals made it clear that the trial court "is authorized to consider 'only whether the decision of an accrediting agency such as ACCSC is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.'" *Id.* at 171. Further defining how that standard is to be applied, the Court stated that, "courts should 'focus primarily on whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision.'" *Id.* at 172. The Court further noted that the "Supreme Court has defined substantial evidence to be anything 'more than a mere scintilla' provided that a 'reasonable mind might accept the evidence as adequate to support a conclusion.'" *Id.* at 174. The Court in *Professional Massage* strongly reiterated that "courts are 'not free to conduct a *de novo* review or to substitute their judgment for the professional judgment of the educators involved in the accreditation process.'" *Id.* at 171. The Fourth Circuit Court of Appeals reiterated those standards again recently when ruling in favor of ACICS in its unpublished opinion in the matter of *Bristol Univ. v. Accrediting Council for Indep. Colleges & Schs*, 691 Fed. Appx. 737 (4th Cir. 2017), and this Court also recently applied those standards in granting summary judgment in favor of ACICS in *The West Virginia Business College, et. al., v. Accrediting Council for Independent Colleges and Schools*, 2019 U.S. Dist. Lexis 102940 (E.D.Va. June 18, 2019).

As noted above, the action taken by ACICS to temporarily suspend new enrollments is well within its authority as an accrediting body. Indeed, at the December 2019 meeting, the ACICS Council had the authority to withdraw Stratford's accreditation based on the remaining areas of non-compliance with the *Accreditation Criteria*. As noted above, applicable federal regulations

and the *Accreditation Criteria* provide for prompt action when an institution is out of compliance. The Introduction to Title II, Chapter 3 of the *Accreditation Criteria* provides, in part, that, "If the Council determines that an institution is not in compliance with the *Accreditation Criteria*, it will take prompt adverse action against the institution, or it will require the institution to take appropriate action to bring itself into compliance with the *Accreditation Criteria* within a time frame specified by the Council after the institution has been notified that it is not in compliance." **Exhibit 2** at Title II, Ch. 3, *see also* 34 C.F.R. 602.20(a). Accordingly, the Council had the clear authority to immediately take adverse action, or to allow a specified time for compliance. In allowing Strafford additional time to seek compliance, the Council is authorized to require the institution to "take appropriate action," and imposing a condition on new enrollments is clearly reasonable. That is, if the Council had the authority to promptly withdraw Stratford's accreditation, it certainly has the authority to take the lesser action of allowing Stratford more time, while conditioning new enrollments. Stratford's only argument is that the *Accreditation Criteria* do not specifically include a statement that ACICS may temporarily suspend new enrollments, but the *Criteria* also do not prohibit such a condition, and they give the Council wide discretion in dealing with institutions that are out of compliance. Further, as noted above, this Court has previously imposed the condition of no new enrollments itself, which supports the reasonableness of ACICS's actions.

In addition, ACICS's actions are supported by substantial evidence, as detailed in the December 19, 2019 and February 26, 2020 letters. *See* **Exhibits 3 and 5**. The statements by Dr. Shurtz on the YouTube video directly contradict Stratford's prior representations to ACICS and, along with the other materials and information relied upon by ACICS, provide a clear basis upon which to place further conditions on Stratford's show cause status. Institutional integrity is a

14

critical component of accreditation, as noted in Section 3-1-202 of the *Accreditation Criteria*: "The integrity and capability of an institution is manifested by the professional competence, experience, personal responsibility, and ethical practices demonstrated by all individuals comprising the ownership, control, and management." **Exhibit 2** at Section 3-1-202. The statements on the YouTube video call that integrity into question, and while Stratford will have an opportunity to dispute the video at the March 31, 2020 hearing, the evidence at this time provides clear support for a temporary suspension of new enrollments until that time.

Stratford spends much effort in its Memorandum asserting that the actions at the branch campus in Iraq are those of a rogue business partner, and Stratford believes it therefore should not be held accountable. It is clear from Stratford's Memorandum that Stratford had negotiations with this individual and entered into a business arrangement with him, including providing him with Stratford materials and support. Stratford does not deny that activities have taken place in Iraq that have not been approved by ACICS, but has instead blamed those actions on their business associate. Their effort to say that he acted on his own and they have no control over him may be evidence of their bad judgment in selecting business partners, but it is not a valid basis upon which ACICS should be compelled to refrain from taking appropriate actions against the school. The *Accreditation Criteria* speak to this issue, as well: "An institution must assume full responsibility for the actions, statements, and conduct of its representatives and must, therefore, select each of them with the utmost care, provide them with adequate training, and arrange for constant and proper supervision and evaluation of their work." *Accreditation Criteria* Section 3-1-202 at **Exhibit 2** hereto. The assertions in Stratford's own Memorandum demonstrate that Stratford has utterly failed to adhere to those standards with respect to the activities in Iraq, and ACICS is fully justified in taking remedial actions.

**B.     Stratford Cannot Satisfy All Of The Remaining Factors**

The resolution of the likelihood of success factor is fully dispositive of Stratford's motion, but it is worth noting that Stratford falls short on other factors, as well. Stratford asserts that the temporary restriction on enrollment of students is a de facto adverse action taken by ACICS which will cause irreparable harm to the institution. As explained above, the restriction on student enrollment is only a temporary measure that logically seeks to protect new students from enrolling new students while Stratford's show cause process plays out. From an educational and practical perspective, it simply does not make sense to allow new students to enroll for a few weeks only to have the institution potentially have its accreditation withdrawn at the conclusion of the show cause hearing.  As always, ACICS is concerned about the best interest of the student. The temporary restriction on enrollments only seeks to further that cause.

Stratford also contends in its Memorandum that the temporary suspension of new enrollments, the requirement for teach out agreements, and the requirement to publish notice of suspension is somehow impermissible and amplifies the harm to the school.  Stratford's arguments, however, fail to recognize the seriousness of a show cause directive as stated in the *Accreditation Criteria*. The *Criteria* state that, "[a]ll institutions that are issued a show-cause directive by the Council will be directed to submit a school closure plan and may be required to submit a teach-out agreement as described in Section 2-2-303 of the *Accreditation Criteria*." **Exhibit 2** at Section 2-3-230.  Accordingly, school closure plans and teach-out agreements are a published part of the show cause process because of the possibility that loss of accreditation may result.  Further, regarding ACICS's statements about the decision, Section 2-3-233 of the *Accreditation Criteria* specifically require that ACICS must notify the U.S. Secretary of Education, appropriate state regulatory agencies, and the public when an institution is placed on show cause.  *See* **Exhibit 2**.

Accordingly, Stratford's claims that ACICS has somehow harmed it by publishing notice of the action are directly contradicted by the fact that such notice is mandatory. The same is true regarding the requirement for Stratford to notify its students, as "[t]he institution is required to notify immediately its current and prospective students along with the public of its show cause status through appropriate means, including posting a prominent notice on its website." *Id.* Thus, ACICS's instructions for Stratford to notify students and prospective students is consistent with the requirements and in no way creates any additional harm.

Regarding the balance of the equities, ACICS accredits many institutions of higher education, and maintaining the rigors of accreditation is critically important to all accredited schools. As a federally recognized accrediting body, ACICS is reviewed at least every five (5) years by the DOE for compliance with federal regulations governing accreditation. For accreditation to have value, it must be credible and it must represent excellence. Further, the newly enrolled students may be placed in an extremely precarious position if they enroll and their school's accreditation is withdrawn a few weeks later. When balancing the impact of one institution having to temporarily halt enrollments for a short time against the value of accreditation to the many other schools recognized by ACICS, it is clear that the balance of the equities favors ACICS.

Similarly, the public interest mandates that ACICS's actions be upheld. Accreditation is designed to ensure that the recognized schools are living up to high standards and are providing students with meaningful instruction and valuable career tools. There is no public interest that favors enrolling students only to potentially find out a few weeks later that their school's accreditation has been withdrawn. The public interest is for the students and prospective students to be fully aware that Stratford's accreditation is in question. To judicially force ACICS to permit

17

an institution to enroll students under the circumstances would be directly contrary to the public interest served by the entire system of accreditation, which is to ensure minimum standards of quality in student education.

In short, Stratford cannot satisfy the required elements necessary to obtain a temporary restraining order. Failure to meet any one of the elements is fatal, and Stratford therefore has fallen well short of its burden. The motion should be denied.

WHEREFORE, ACICS respectfully requests that Stratford's motion be denied, that ACICS be awarded its reasonable attorneys' fees and costs incurred in defending this action pursuant to Article IX, Section 2 of the ACICS Bylaws, and that ACICS be granted such further and additional relief as the Court deems just and proper.

Respectfully submitted,

**ACCREDITING COUNCIL FOR INDEPENDENT COLLEGES AND SCHOOLS**
By counsel

_____/s/ Michael C. Gartner_____
Michael C. Gartner, Esq. (Va. Bar No. 41463)
Kenneth J. Ingram, Esq. (Va. Bar No. 21293)
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
(703) 280-9267 (voice)
(703) 280-9139 (facsimile)
mgartner@wtplaw.com
kingram@wtplaw.com

**CERTIFICATE OF SERVICE**

    I hereby certify that a true copy of the foregoing was served on all counsel through the Court's electronic filing and service system this 5th day of March, 2019 to:

           /s/ Michael C. Gartner
Michael C. Gartner, Esq. (Va. Bar No. 41463)
Kenneth J. Ingram, Esq. (Va. Bar No. 21293)
WHITEFORD, TAYLOR & PRESTON, LLP
3190 Fairview Park Drive, Suite 800
Falls Church, Virginia 22042
(703) 280-9267 (voice)
(703) 280-9139 (facsimile)
mgartner@wtplaw.com
kingram@wtplaw.com
*Counsel for Defendant Accrediting Council for Independent Colleges and Schools*